## TAFT v. UNITED STATES.

### No. 156.

Circuit Court of Appeals, Second Circuit.

April 24, 1942.

Frank W. Morrison, of Whitinsville, Mass., for appellant.

Fendall Marbury, of Washington, D. C., Joseph A. McNamara, U. S. Atty., of Burlington, Vt., Julius C. Martin, and Wilbur C. Pickett, both of Washington, D. C., for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff appeals from a judgment at law dismissing her petition to recover upon a policy of war risk insurance; and from a second judgment in the same action dismissing a complaint filed later, seeking to reinstate the policy if it should be found to have lapsed. The complaint was filed after a jury had rendered a special verdict in the action, but before the judge had entered judgment on the petition. He then heard the case for reinstatement upon evidence already taken under the petition, and entered two judgments, one dismissing the petition notwithstanding the verdict, and the other dismissing the complaint. The plaintiff sued as administratrix of the insured's estate, and as beneficiary under the policy; there is no dispute that the policy remained in force up to November 1, 1920, or that if it continued to be in force on November 7, 1920, when the insured died, the plaintiff should recover. It was taken out on February 8, 1918, and on November 6, 1920, a partner of the insured posted the right premium at Bellows Falls, Vermont, and the Veterans' Bureau received it in due course. The jury found that on that day, the insured executed an application for the reinstatement of the policy and posted it in Saxton's River, Vermont, and that this also reached the Veterans' Bureau. (This finding is extremely doubtful, but arguendo we shall accept it in the action to rein-

state.) The Bureau never acted upon this application, because it has always insisted that it was never received; but the insured was in good health on November 7th when he was killed in a motor accident. The plaintiff's position is two-fold: she says that, since the policy was taken out on February 8, 1918, the last premium, which was for September, 1920, covered a period of thirty days ending October 8th, after which the policy remained in force until November 8th, by virtue of the period of grace conferred by Treasury Decision 61 which was in effect at the time. As an alternative she says that, if the policy did lapse before the premium was "forwarded" on November 6th, nevertheless when the insured posted his application for reinstatement on that day, he brought himself within § 308 of the World War Veterans' Act, § 516a of Title 38, U.S.C.A., and that the director should have been "satisfied" that he was then "in the state of health required by bureau regulations" and should have reinstated the policy. The judge decided that the policy had lapsed, and that no action lay to compel its reinstatement.

We shall take the last point first, because it is ruled by Meadows v. United States, 281 U.S. 271, 50 S.Ct. 279, 74 L.Ed. 852, 73 A.L.R. 310. Section 308, although first passed in 1924, was retroactive in its effect. White v. United States, 270 U.S. 175, 180, 46 S.Ct. 274, 70 L.Ed. 530. Moreover, since the insured "forwarded" the premium for October before November 7th, the director would have been bound to reinstate the policy if he was satisfied as to the insured's health, except for the fifth article of Treasury Decision 61 which required the insured to file "an application for reinstatement" within three months. However, if we accept the special verdict as true, the insured had filed just such an application and had therefore done all that was necessary, and the director's refusal was wrongful. It is true that Meadows v. United States, supra, 281 U.S. 271, 50 S.Ct. 279, 280, 74 L.Ed. 852, 73 A.L.R. 310, did not concern quite the same situation: the director had considered the application but he thought the insured "totally and permanently disabled." Thus, in order to succeed, the insured had to upset a finding made by the director, and the court might have rested upon the finality of his decision unless there was no "substantial evidence" to support it. Conceivably the plaintiff at bar may have had

an action to compel the director to discharge the duty which we are assuming that he refused to discharge. Even so, it would not be possible for her to sue the United States in an action in Vermont, unless Congress included that remedy as a part of the procedure permissible in an action brought under § 19, 38 U.S.C.A. § 445. Meadows v. United States, supra, 281 U.S. 271, 50 S.Ct. 279, 74 L.Ed. 852, 73 A.L.R. 310, did not at all hold that the decision of the director could not be reëxamined by the district court; it decided that no action of any kind lay against the United States except one brought upon a policy which had not lapsed and needed no reïnstatement. It follows that the judgment dismissing the complaint for reïnstatement was right.

■ The validity of the judgment dismissing the petition to recover upon the policy depends upon whether each payment of a premium extended it until the eighth day of the month following that for which it was payable. If so, the payment of the September premium extended the policy till October 8th, and the period of grace added 31 days more which included the day of the insured's death. The argument in support of this, as we understand it, is that the Bureau had no power to change the due date of a premium, or the period during which any premium extended the policy. The policy was issued under the Act of October 6, 1917, and was in terms made subject to "all regulations thereunder, now in force, or hereafter adopted, all of which * * * shall constitute the contract." Section 404 of that act, 40 St.L. p. 410, provided that "regulations * * * shall prescribe the time and method of payment of the premiums." When the policy issued, Treasury Bulletin No. 1 (October 15, 1917) was still in force, under which premiums were to be paid "monthly on or before the last day of each calendar month" with a "period of grace" of 31 days after the month had expired, during which the policy remained in force and the premium might be paid. This was changed on June 30, 1920 by Treasury Decision 61 which made premiums payable on the first day of the month next after that in which they had been payable theretofore, and made each premium cover the month on whose first day it was payable—i. e., the month next after that in which it had formerly been payable. However, since the "grace period" was made to end 31 days after the first day of the month for which the premium was paid, the effect was not to extend the policy at all. In the case at bar the last premium paid by the insured before November 6, 1920, being for September, the policy expired 31 days from October 1st and was not in force when the payment of November 6th was made.

Judgments affirmed.